Peñagarícano Soler, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, la Sra. Elizabeth Collazo Ortiz, la Sra. María V. Ortiz Vega, y otros, (en adelante, los apelantes), mediante Apelación presentada el 22 de septiembre de 2003. Nos solicitan, revisemos la Sentencia emitida el 14 de julio de 2003 por el Tribunal de Primera Instancia (en adelante, TPI), la cual fue notificada el 30 de julio de 2003. Mediante la misma, el foro de instancia declaró No Ha Lugar la demanda de marras.
Examinados los escritos y documentos presentados por las partes, determinamos confirmar la Sentencia apelada.
I
El 21 de julio de 1995, mientras se encontraba bajo la supervisión de su tía, la entonces menor Joannie Collazo Ortiz, el niño Randy M. Nevárez Collazo cayó al vacío desde el balcón del apartamento 1204 del Condominio El Trébol (en adelante, Condominio) localizado en Río Piedras. El 17 de julio de 1995, la madre del niño Elizabeth Collazo, en representación de éste y otros familiares, instó una Demanda por daños y perjuicios en contra del Departamento de la Vivienda (en adelante, Vivienda) y otras partes. En la misma adujo que la muerte del niño respondió a que el balcón en cuestión tenía una abertura de unas 5½ pulgadas, lo cual violentaba *1112 los códigos de construcción aplicables. Ello, pues, alegadamente las normas requerían que las holguras en los balcones no excedieran las cuatro pulgadas. 
Con fecha de 4 de septiembre de 1996, Basora presentó su contestación a la Demanda en donde argüyó en esencia que entre su diseño de mejoras al Condominio, no estuvo incluido el diseño o remodelación de los balcones de éste. El 18 de septiembre de 1996, el TPI ordenó la consolidación de los casos presentados. En tanto, el 20 de febrero de 1998, Caribe Tecno trajo al pleito a Carrillo al presentar una demanda contra tercero. El 26 de junio de 1998, Carrillo presentó su contestación a la demanda de tercero incoada. Luego de un extenso trámite procesal, el 19 de junio de 2000 comenzó a celebrarse la Vista en su Fondo del caso de marras. Ese mismo día, los apelantes presentaron el acuerdo transaccional al cual llegaron con las siguientes partes demandadas: Vivienda, A & M Contractors, Caribe Tecno y General Acc. Ins. Company. Así pues, se dio por concluida la causa de acción en contra de las precitadas partes.
Así las cosas, el juicio del caso de marras continuó celebrándose hasta el 23 de junio de 2000, cuando la parte apelante concluyó con la presentación de su prueba. No obstante, el 22 de junio de 2000, Carrillo había solicitado en corte abierta la desestimación del caso por alegada insuficiencia de la prueba. Posteriormente, con fecha de 3 de julio de 2000, Carrillo presentó ante el foro de instancia una Moción de Desestimación y/o “Non-Suit”. El 21 de agosto de 2000, Basora se unió mediante escrito a esos efectos a la moción de desestimación que presentó Carrillo. En esa misma fecha, el TPI emitió una Orden en donde suspendió la continuación de la Vista en su Fondo, y concedió un término a la parte demandante para expresarse en tomo a la moción de desestimación. 
El 15 de noviembre de 2000, Carrillo presentó una moción reiterando su solicitud de desestimación bajo la Regla 39.2 de Procedimiento Civil. En idéntica fecha, Basora se unió a la reiterada moción de desestimación. El 10 de enero de 2001, los apelantes presentaron su oposición a la moción de desestimación interpuesta. En tanto, el 11 de marzo de 2001, el foro de instancia emitió una Resolución por la cual acogió formalmente la transacción realizada entre los apelantes y algunos de los codemandados. 
Posterior a varias incidencias de índole procesal, el 14 de julio de 2003, el TPI dictó la Sentencia apelada. En la misma, este foro declaró No Ha Lugar la demanda de autos en cuanto a las restantes partes en el pleito -Carrillo y Basora-. El 8 de agosto de 2003, los apelantes presentaron una moción de reconsideración, la cual fue posteriormente denegada. Inconforme, la parte apelante acudió ante nos indicando los siguientes señalamientos de error:

“Primer Error: Erró el TPI apelado al resolver que la prueba presentada por la parte apelante no establecía responsabilidad de la parte apelada y desestimar la demanda al amparo de la Regla 39.2 (c) de las de Procedimiento Civil.

Segundo Error: Erró el TPI apelado al resolver que la apelada Basora, Rodríguez & Asoc. no incumplió con un deber impuesto por ley o reglamento.

Tercer Error: Erró el TPI apelado al resolver que “Basora, Rodríguez & Asociados partieron de un plano del edificio “as built” en el que se hacía constar que todas las holguras o aberturas medían 4”, lo que era consistente con el uso y costumbre de la industria ”, implicando que ésta no tenía el deber de verificar que los mismos concordaron con la realidad del campo.

Cuarto Error: Erró el TPI apelado al no considerar y omitir resolver que Basora, Rodríguez & Asoc. incumplió su deber de actuar como un buen padre de familia al no incluir en los planos de construcción la reparación de la referida abertura y al no requerir su reparación durante las inspecciones realizadas mientras supervisaba el proyecto.

*1113
Quinto Error: Erró el TPI apelado al no considerar y omitir resolver que Carrillo & Asoc. incumplió su deber de actuar como un buen padre de familia al no requerir la reparación de la referida abertura durante su inspección diaria de los trabajos de construcción.

Sexto Error: Erró el TPI al determinar que, según el contrato, la labor de Carrillo & Asoc. se limitaba a verificar que los trabajos de construcción estuvieran siendo realizados de acuerdo a los planos y especificaciones, sin discreción para evaluar, recomendar o ejecutar otras acciones, a pesar de que el mismo establece claramente que su labor se extendía a determinar probables fuentes de problemas en los planos, especificaciones o en el proyecto (como el riesgo creado por la aludida abertura).

Séptimo Error: Erró el TPI al determinar que los apelados no tenían el deber contractual de cumplir con el Uniform Building Code de 1991, el cual establece la norma de seguridad de que el ancho de las aberturas de los balcones tiene que ser menor de 4 ”, con el propósito de evitar precisamente el riesgo de caídas de niños pequeños por las mismas.

Octavo Error: Erró el TPI al determinar que los apelados no tenían el deber legal de cumplir con la norma de seguridad antes mencionada establecida por el uso y costumbre en la industria de la construcción, a pesar de que su propósito es cumplir con la obligación primaria de las profesiones de la ingeniería y la arquitectura de velar por la seguridad, salud, propiedad y bienestar del público, como lo exige la figura del buen padre de familia.

Noveno Error: Erró el TPI al determinar que el accidente ocurrió debido a que la apelante Johannie incumplió su deber de vigilancia hacia Randy, exigiéndole que se percatara de que éste cabía por la referida abertura, a diferencia de la abertura en el balcón del apartamento 304-B; imponiéndole así a una persona lega el deber de percatarse que la apertura era IV2” más ancha de lo permitido por las normas de seguridad, aunque eximió de esa responsabilidad a los apelados, expertos en la industria de la construcción.

Décimo Error: Erró el TPI al resolver que los apelados no tienen el deber de indemnizar a los apelantes por los daños sufridos como consecuencia del accidente antes relatado. ”

El 22 de octubre de 2003, Basora presentó su Alegato en tomo al caso de marras. El 13 de noviembre de 2003, concedimos a la parte apelante un término para presentar un proyecto de exposición narrativa de la prueba. Luego de varios trámites, y de declarar No ha Lugar una moción de desestimación según fuera presentada por Carrillo, el 17 de mayo de 2004 concedimos a los apelantes una prórroga final para presentar la exposición narrativa requerida. Finalmente, y posterior a diversas incidencias el 19 de enero de 2005, se presentó la Transcripción de la prueba estipulada. El 3 de febrero de 2005, ordenamos mediante Resolución elevar los autos originales del caso ante nos.
II
El Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141, dispone:

“El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. ”

Acorde al mismo, se impone responsabilidad a aquella persona que cause daño a otra, ya sea mediante acción u omisión en la que intervenga culpa o negligencia. Valle Izquierdo v. E.L.A., 2002 J.T.S. 70; Laureano Pérez v. Soto, 141 D.P.R. 77 (1996). Para imponer responsabilidad civil bajo el aludido Artículo, es necesario que concurran tres elementos: (1) que se establezca la realidad del daño sufrido; (2) que exista la correspondiente relación causal entre el daño y la acción u omisión de otra persona; y (3) que dicho acto u *1114 omisión sea culposo o negligente. Valle Izquierdo v. E.L.A., supra; Colón González v. K-Mart, 2001 J.T.S. 98; Tormos Arroyo v. D.I.P., 140 D.P.R. 265 (1996); Monllor Arzola v. Sociedad, 138 D.P.R. 600 (1995); Santini Rivera v. Serv. Air lnc., 137 D.P.R. 1 (1994); Elba A.B. v. Universidad de Puerto Rico, 125 D.P.R. 294 (1990).
El concepto de culpa que contiene el Art. 1802 es sumamente abarcador y por ello se ha reconocido que incluye cualquier falta de una persona a otra y que pudiera causar un daño. Santini Rivera v. Serv. Air, Inc., supra; Leyva v. Aristud, 132 D.P.R. 489 (1993); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987). Además, el Tribunal Supremo de Puerto Rico recientemente ha subrayado: “...no hemos tenido reparo en advertir reiteradamente que la culpa o negligencia es la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, que una persona prudente habría de prever en las mismas circunstancias...’’. Valle Izquierdo v. E.L.A., supra, a la pág. 359; Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997).
Para fines de este artículo, se ha definido el vocablo “dañó” como “todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra”. Santini Rivera et al. v. Serv. Air, Inc. et al, supra. Asimismo, el Tribunal Supremo ha manifestado que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto u omisión, que una persona prudente y razonable hubiera previsto en las mismas circunstancias. Valle Izquierdo v. E.L.A., supra.
Este deber de anticipar y prever los daños no se extiende a todo peligro imaginable, sino a aquél que puede ser anticipado por una persona prudente. Tormos Arroyo v. D.I.P., supra. Respecto a la relación causal, rige en nuestra jurisdicción la doctrina de causa adecuada. A base de la misma, no se considerará causa toda condición sin la cual no se hubiera producido el resultado, sino la que de ordinario lo produce según la experiencia general. Toro Aponte v. E.L.A., supra; Parrilla Báez v. Airport Catering Services, 133 D.P.R. 263 (1993); Aseg. Lloyd's London v. Cía. Des. Comercial, 126 D.P.R. 251 (1990). Por tanto, salvo aquellas circunstancias en las que es de aplicación la doctrina de responsabilidad absoluta, el demandante tiene que probar la negligencia, no basta con alegarla.
Como es sabido, la obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en la cuestión en controversia. Regla 10(B) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(B); Reece Corp. v. Ariela, 122 D.P.R. 270 (1988); Asoc. Auténtica Empleados v. Municipio de Bayamón, 111 D.P.R. 527 (1981); P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200 (1975). Es por esto, que la parte demandante tiene el peso de la prueba para establecer la negligencia del demandado. Colón González v. K-Mart, 2001 J.T.S. 98. De otra parte, se ha establecido que la prueba de negligencia civil es de menos grado y rigor que aquella exigida para derrotar la presunción de inocencia en un caso criminal. Viuda de Morales v. De Jesús Toro, 107 D.P.R. 826 (1978). Así pues, a modo de ejemplo, en una acción de daños y perjuicios, el demandante no tiene que probar la negligencia más allá de duda razonable.
Asimismo, la negligencia no tiene que probarse necesariamente mediante prueba directa, pudiéndose probar mediante prueba circunstancial. Colón González v. K-Mart, supra; Bacó v. Almacén, 2000 J.T.S. 122; Regla 10 (H) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(H). En cuanto a la prueba indirecta, se ha dicho que su característica fundamental es que la evidencia ofrecida, aun cuando fuera creída por el juzgador, no es por sí suficiente para probar un hecho en controversia. Se requiere además un proceso de inferencias en conjunción con otra evidencia, ya sea admitida o por admitirse, o un razonamiento basado en la experiencia y las inferencias que hace una persona razonable. Bacó v. Almacén, supra.
Habida cuenta de lo anterior, la Regla 43.2 de Procedimiento Civil reza en lo pertinente:
“[...]Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean *1115 claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigosj.32 L.P.R.A. Ap. Ill, R. 43.2
Predicado en ello, sabido es que los tribunales apelativos se deben abstener de intervenir o sustituir las determinaciones de hechos tomadas por el juzgador de hechos, en ausencia de prejuicio o error manifiesto. Flores v. Soc. de Gananciales, 146 D.P.R. 45 (1998); Monllor Arzola v. Soc. de Gananciales, 138 D.P.R. 600 (1995). Esta consabida norma es de aplicación también para la adjudicación de credibilidad que hiciere el juzgador de hechos. Ibid. López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857 (1997); Quiñones López v. Manzano Posas, 141 D.P.R. 139 (1996); Orta v. Padilla, 137 D.P.R. 927 (1995). Por ello, no habremos de intervenir con la apreciación de la prueba realizada por el foro de instancia, sino cuando la evidencia sea imposible o increíble de creer. Pueblo v. Rivero Diodonet, 121 D.P.R. 454 (1988).
No obstante, a pesar de la deferencia merecida al foro apelado, hemos de intervenir con la apreciación hecha por éste en caso de abuso de discreción, o en casos en los que haya actuado animado por pasión, parcialidad, prejuicio o error manifiesto. Asimismo, precisa señalar que en aquellos casos en los que estén en cuestión factores subjetivos, el juzgador de hechos, por razón de haber escuchado y apreciado el demeanor de los testigos, es quien mejor está situado para aquilatar la prueba desfilada. López Vicil v. ITT Intermedia, Inc., supra; Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975).
En tanto, la Regla 39.2 de Procedimiento Civil, versa en lo pertinente:

"(a)...

(b)...

(c) Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos. ” 32 L.P. R.A. Ap. Ill, R. 39.2
La Regla 39.2 (c), supra, es de aplicación cuando el demandante en el juicio ha terminado la presentación de su prueba y el demandado, sin renunciar al derecho de presentar prueba a su favor, solicita la desestimación por el fundamento de que a tenor con los hechos probados hasta ese momento y el derecho aplicable, el demandante no tiene remedio alguno a su favor. Luego de solicitarse la desestimación de conformidad con la Regla 39.2(c), supra, el foro de instancia puede determinar los hechos y dictar sentencia contra el demandante, o negarse a dictar sentencia hasta que toda la prueba haya sido presentada.
Así pues, la Regla 39.2 (c), supra, otorga al juzgador la facultad para aquilatar la prueba del demandante y formular determinaciones de hechos según la credibilidad que le haya merecido la prueba presentada. Empero, se requiere que dicha facultad sea ejercitada después de un escrutinio severo y cuidadoso de la prueba, por lo que en casos de duda, es preferible que el demandado presente su caso. Romero Arroyo v. E.L.A., 139 D.P.R. 576 (1995); Roselló Cruz v. García 116 D.P.R. 511 (1985); Morales Vda. de Zoyas v. Pepsi Cola Bottling Co., 114 D.P.R. 772 (1983); Colombani v. Gob. Municipal de Bayamón, 100 D.P.R. 120 (1971).
Analizada la controversia de marras bajo el crisol doctrinario previamente esbozado, nos encontramos en *1116 posición de resolver. Así lo hacemos.
III
Por estar intrínsecamente relacionados, discutiremos en conjunto los citados señalamientos de error.
En la apelación que nos ocupa, la parte apelante esgrime esencialmente que el TPI erró en su apreciación de la prueba una vez que el aludido foro determinó que esta parte no logró probar la responsabilidad de Basora y Carrillo con los fatales hechos medulares, los cuales son la génesis del caso que nos ocupa. A esos efectos, esta parte arguye que el tribunal de instancia no debió conceder la moción de desestimación por insuficiencia de la prueba que levantaran Carrillo y Basora.
Como parte de los hechos del caso de autos, surge que a principio de los años 90’, Vivienda encomendó la remodelación del Condominio en donde ocurrió el accidente. En la misma, Basora figuró como la firma de arquitectos que diseñaría y planificaría la remodelación. Por su parte, Carrillo fue la compañía encargada de inspeccionar las obras de remodelación.
En vista de ello, los apelantes argumentan en cuanto a Basora, que como parte del proceso de planificación y diseño de la remodelación, estaba obligado a verificar que las medidas señaladas en los planos originales del Condominio reflejasen la realidad. En tanto, los apelantes alegan que Carrillo tenía la obligación de velar tanto el cumplimiento de las obras de remodelación, como de alertar sobre la holgura del balcón en cuestión. Asimismo, los apelantes aducen que el Uniform Building Códe preceptuaba el que los balcones no tuvieran holguras en exceso de 4 pulgadas, y que Basora estaba obligado a la referida directriz.
Como parte de su argumentación ante el foro apelado, Basora indicó que su diseño de remodelación fue apoyado en los planos originales del Condominio que le fueran facilitados por Vivienda. En los referidos planos se sostenía, entre otras cosas, que las holguras de los balcones en el Condominio medían 4 pulgadas. Asimismo, Basora argüyó que como parte de sus deberes no estaba incluida la remodelación de los balcones o las holguras de éstos. Por su parte, Carrillo subrayó -en esencia- que sus responsabilidades de inspección se circunscribían a velar por el cumplimiento de las órdenes de construcción. Así pues, esta parte esgrimió que no estaba obligado a verificar en específico la holgura de los balcones del Condominio. Veamos.
En el caso de autos, el tribunal de instancia determinó que la moción de desestimación por insuficiencia de la prueba era procedente; esto pues, la parte apelante no logró probar la conexión causal entre Basora y Carrillo con el trágico accidente. Entre las determinaciones de hechos de autos, el TPI halló que Basora realizó el diseño de la remodelación apoyándose en los planos “as built’ que recibió por parte de Vivienda. Además, y en atención a lo argumentado por los apelantes en tomo a que la responsabilidad de Basora residía en las directrices del Uniforme Building Code, el TPI subrayó que del testimonio del propio perito de los apelantes surge que el código era un reglamento de aplicación opcional. Por esto, y en vista de que los planos originales del Condominio aseguraban que las holguras de los balcones no excedían las 4 pulgadas, el TPI concluyó que no procedía la imposición de responsabilidad a Basora o a Carrillo.
Asimismo, el TPI expresó haber analizado detenidamente los contratos otorgados por Basora y Carrillo con Vivienda, y de los mismos no encontró obligación alguna de índole contractual que, de haberse incumplido, resultara en la causa próxima del accidente. Es menester precisar que no hubo testigos oculares del accidente en cuestión. Esto es, que lo que existe son teorías de lo ocurrido. Como corolario, luego de que el tribunal apelado apreciara y aquilatara la totalidad de la prueba vertida por los apelantes, determinó que los apelantes no habían logrado probar por preponderancia de la prueba, la responsabilidad de los apelados de epígrafe. 
Como dijéramos, los tribunales apelativos se abstendrán de intervenir o sustituir las determinaciones de hechos tomadas por el juzgador de hechos, en ausencia de prejuicio o error manifiesto. Flores v. Soc. de *1117 Gananciales, supra. En el caso de marras, los apelantes no han traído prueba robusta que derrote las determinaciones tomadas por el TPI. Este foro recibió la totalidad de la prueba de los apelantes, incluyendo el testimonio de su perito y el de la joven que debía haber vigilado al niño; y analizó los contratos pertinentes. No incidió el tribunal de instancia.
IV
Por los fundamentos anteriormente esbozados, se confirma la Sentencia apelada.
Se ordena a la Secretaria Interina del Tribunal, remita los autos originales del Tribunal de Primera Instancia junto con el mandato.
Así lo acordó y lo manda el Tribunal y lo certifica la Secretaria Interina del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 52
1. Caso civil núm. KDP-96-0861. Las otras partes demandadas lo fueron: Caribe Tecno, S.E. (en adelante, Caribe Tecno), el contratista que realizó la última remodelación del referido Condominio; A & M Contractors, Inc. (en adelante, A & M), compañía administradora del Condominio; Basora, Rodríguez & Asociados (en adelante, Basora), arquitectos encargados de planificar y diseñar la última remodelación del Condominio; Carrillo & Asociados (en adelante, Carrillo), compañía a cargo de inspeccionar la aludida remodelación; así como las respectivas aseguradoras. Véase, folio núm. 1 en Apéndice de autos.
2. El 19 de julio de 1996, la Sra. María V. Ortiz Vega, en representación de su hija Joannie Collazo Ortiz, presentó a su vez una Demanda por daños y perjuicios en contra de las mismas partes alegando que esta última había sufrido angustias mentales por la muerte del niño. Véase, caso núm. KDP-96-0878, folio núm. 12 en Apéndice de autos.
3. Véase, folio núm. 19 en Apéndice de autos.
4. Véase, folio núm. 35 en Apéndice de autos.
5. Véase, folio núm. 243 en Apéndice de autos.
6. Véase, folio núm. 296 en Apéndice de autos.
7. Véase, Estipulación de Transacción Parcial y “Pacto Non Patendo”, folio núm. 469 en Apéndice de autos.
8. Véanse, Minutas, folios 483 A-O, en Apéndice de autos.
9. Véase, Minuta, folio 483 M, en Apéndice de autos.
10. Véase, folio núm. 484 en Apéndice de autos.
11. Véase, folio núm. 517 en Apéndice de autos.
12. Véase, folio núm. 531 en Apéndice de autos.
13. Véase, folio núm. 553 en Apéndice de autos.
14. Véase, folio núm. 586 en Apéndice de autos.
*1118 15. Véase, folio núm. 588 en Apéndice de autos.
16. Véase, folio núm. 613 en Apéndice de autos.
17. Véase, folio núm. 634 en Apéndice de autos.
18. Véanse, folios núm. 641 y 660 en Apéndice de autos.
19. También es sabido que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996). Esto último es conocido como la doctrina de la negligencia comparada: “[...] la negligencia concurrente o contribuyente del demandante (y la asunción de riesgos por éste), sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad a éste. Se ha dicho que esta norma tiende a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes conforme a la proporción de su descuido o negligencia. Requiere que en todos los casos, el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, determine la fracción (o la percentila) de responsabilidad o negligencia que corresponde a cada parte, y reduzca la indemnización del demandante de conformidad con esta distribución de responsabilidad [....]”. H.M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da ed., San Juan, Publicaciones JTS, 1986, pág. 410.
20. Véase, folio núm. 56 de Transcripción en autos.
21. Además, y acorde a las manifestaciones del foro apelado, es incuestionable que el difunto niño estuvo huérfano de supervisión adecuada en los últimos momentos de su vida.
22. Como parte de la prueba, el foro a quo recibió el testimonio del Ing. Luis Mora Faria, Ph.D, perito de los apelantes. Este, luego de analizar las tres posibles teorías del accidente, opinó que el menor debió de haber salido del balcón por una holgura que según su apreciación tenía una medida aproximada de 5 y media pulgadas. Véase, folio núm. 636 en Apéndice de autos.